The People, ex rel. Gustave Angerstein et al., Appellants, *v.* Bernard Kenney et al., Respondents.

Where part of a statute is unconstitutional, this does not affect the validity of the remainder, unless the provisions are so interdependent that one cannot operate without the other, or are so related, in substance and object, that it is impossible to suppose that the legislature would have passed the one without the other.

If when the constitutional portion is stricken out, that which remains is complete in itself and capable of being executed in accordance with the apparent legislative intent, it must be retained; and this is so although the portion which is condemned is found in the same section with that sought to be retained.

Accordingly *held*, conceding that portion of the provision of the act " to organize the local government of the city of New York " (§ 4, chap. 335, Laws of 1873, as amended by chap. 400, Laws of 1878), providing for the election of aldermen in that city, which prohibits the electors from voting for more than two-thirds of the whole number to be elected, to be

violative of the provision of the State Constitution (Art. 2, § 1), providing that qualified voters "shall be entitled to vote * * * for all officers that now are or hereafter may be elective by the people," (as to which *quære*) this did not affect the validity of the residue of the section or prevent the election of aldermen in the manner specified.

In an action to test the right of defendants, who claimed office by virtue of an election under said provision, it appeared that defendants received a majority of the votes ; it did not appear that any voter was deprived of the right to vote for the whole number to be elected. *Held,* that the evidence failed to disclose any illegality in the election.

(Argued March 12, 1884; decided June 17, 1884.)

APPEAL from judgment of the General Term of the Supreme Court, in the first judicial department, entered upon an order made February 2, 1883, which affirmed a judgment in favor of defendants, entered upon a decision of the court on trial without a jury.

The nature of the action and the material facts are stated in the opinion.

*Wilson S. Wolf* for appellants. Section 4 of chapter 335, Laws of 1873, is unconstitutional and void, as seeking or attempting to establish a so-called "minority system," and to deprive the voter of his constitutional right to vote for "all officers that may be elected by the people." (Const. of 1846, with amendments to Jan. 1, 1882, art. 2, § 1; 1 R. S. [7th ed.] 85; Const., art. 2, § 2; *Ex parte Selma & Gulf R. R.*, 45 Ala. 696; *P. R. R.* v. *Cadawissa R. R.*, 53 Penn. St. 20 ; Am. Law of Elections [McCrary], 138, § 191; *Lanning* v. *Carpenter*, 20 N. Y. 447; *People* v. *Maynard*, 15 Mich. 471; Cooley's Const. Lim. 616; *Newell* v. *People*, 7 N. Y. 9, 93, 94; *Oakley* v. *Aspinwall*, 3 id. 547, 568, 569 ; *People* v. *Morrill*, 21 Wend. 563; *Clark* v. *City of Rochester*, 34 Barb. 446; *Taylor* v. *Porter*, 4 Hill, 140 ; 8 State Trials, 1047–1049 ; *Norman* v. *Heist*, 5 W. & S. 171; *Hope* v. *Henderson*, 1 Dev. [N. C.] 137; *Dash* v. *Vankleck*, 7 Johns. 477; *Bank, etc.*, v. *Brown*, 26 N. Y. 467; *Corning* v. *Green*, 23 Barb. 33; *People* v. *Hulburt*, 24 Mich. 83.) This restriction upon the right of the voter is connected with, and inseparable from, the

other portions of section 4, Laws of 1873, chapter 335, and said amendments, and hence the whole section is void. (Cooley on Const. Lim. 214; *Santo* v. *State*, 2 Iowa, 115; *Brown* v. *Brown*, 34 Barb. 533; *Bell* v. *Leggett*, 7 N. Y. 173; 17 Barb. 397; 6 Cow. 431; 15 Johns. 352; *Newell* v. *People*, 7 N. Y. 9; 19 Barb. 291, 300, 301; *Rose* v. *Truax*, 21 id. 361, 379; 1 Redf. 477; 36 N. Y. 537; *Hawley* v. *James*, 5 Paige, 318, 415; *Irving* v. *DeKey*, 9 id. 521; 18 Wend. 257; *Amory* v. *Lord*, 9 N. Y. 403; 15 Barb. 139; Cooley on Const. Lim. [4th ed.] 214, 216, note 1; *Wynehamer* v. *People*, 13 N. Y. 378, 441, 442; *Warren* v. *Mayor, etc., of Charleston*, 2 Gray, 97; *State, ex rel.* v. *Comm'rs of Perry Co.*, 5 Ohio St. 506; *Campan* v. *Detroit*, 14 Mich. 276; *People* v. *Tiphaine*, 3 Park. Cr. 241, 246, 247; *Meshmeier* v. *State*, 11 Ind. 482, 485, 486; *Washington* v. *State*, 13 Ark. 752, 763, 764; *Easton* v. *State*, 11 id. 481, 501, 502; 1 Dill. Mun. Corp. 414; *State* v. *Chamberlain*, 8 Vroom [N. J.], 388; *Robinson* v. *Bidwell*, 22 Cal. 379; Sedgwick on the Constr. of Constitutional and State Law [2d ed.], 413, 414; Sedgwick on C. and S. Law, 44; *Lathrop* v. *Mills*, 19 Cal. 513; *State* v. *Perry Co.*, 5 Ohio [N. S.], 497; *Oatman* v. *Bond*, 15 Wis. 20; *Reed* v. *Omnibus*, 33 Cal. 212; *Voorhies* v. *B'k of U. S.*, 10 Pet. 471; *Maize* v. *State*, 4 Ind. 342; Cooley on Const. Lim. [4th ed.] 758, 759; id. 214, 216, note 1, 225.) The repealing clause, Laws of 1873, chapter 335, section 119, by which among other acts that of April 5, 1870, chapter 137, "and all acts and parts of acts inconsistent with the provisions of this act, are hereby repealed," is, as far as section 4 is concerned, void. The provisions for the election of aldermen under Laws of 1870, chapter 137, is not repealed by section 119. It is not inconsistent with section 4, if section 4 is void. (*Campan* v. *Detroit*, 14 Mich. 285, 286; *Harbeck* v. *Mayor*, 10 Bosw. 366; *Devoy* v. *Mayor*, 35 id. 264; 36 N. Y. 449, 451; *Tims* v. *State*, 26 Ala. 165; Cooley on Const. Lim. [4th ed.] 224, 225; *People* v. *Draper*, 15 N. Y. 532; Cooley on Const. Lim. [4th ed.] 224, 225; Potter's Dwarris on Statutes and Constitutions, 157, note 5; *People* v. *Tiphaine*, 3 Park. Cr. 241; *Demarest* v. *The Mayor*, 74 N.

Y. 161, 169; *Van Rensselaer* v. *Snyder*, 9 Barb. 307, 308.)
The presumption is against the theory that the voters voluntarily
waived their right of suffrage. (1 Phillips on Ev. marg. p. 604;
Sedgwick on the Construction of C. & S. Law [2d ed.], 228;
*Gilman* v. *Selogan*, 2 Black, 510; *St. Louis* v. *Boatman Ice
Co.*, 47 Mo. 150; *Bennett* v. *McHorter*, 2 W. Va. 441; *Neeman*
v. *Smith*, 50 Mo. 525; *Minot* v. *P. W. & B. R. R.*, 2 Abb.
[U. S.] 323; *Ex parte McCallum*, 1 Cow. 450; 24 Barb.
446; *People* v. *Huntington*, 4 N. Y. Leg. Obs. 187; *People*
v. *Lacoste*, 37 N. Y. 192; *People, ex rel. Furman*, v. *Clute*,
50 id. 461.) No valid title to an office can rest on a void
law. (*Carleton* v. *People*, 10 Mich. 250; *People, ex rel.
Furman*, v. *Clute*, 50 N. Y. 461; *Strong* v. *Daniel*, 5 Ind. 348;
3 McLean, 107; 5 Nev. 244.) What is true of an act, void *in
toto*, is true also as to any part of an act which is found to be
unconstitutional, and which consequently is to be regarded as
having never at any time been possessed of any legal force.
(Cooley on Const. Lim. 227; *Newell* v. *People*, 7 N. Y. 9, 93,
94; *People* v. *Tiphain*, 3 Park. Cr. 241–4; *Sherman* v. *Bar-
nard*, 19 Barb. 391, 300–301; *Devoy* v. *Mayor*, 55 id. 264–
270; *Clark* v. *Miller*, 54 N. Y. 528–532; *Strong* v. *Daniels*,
5 Ind. 348; *Ostrom* v. *Hammond*, 3 McL. 107; *Woolsey* v.
*Com. B'k*, 6 id. 142; *Detroit* v. *Martin*, 34 Mich. 170; *Sum-
mer* v. *Beebe*, 50 Ind. 341; *Meagher* v. *Storey Co.*, 5 Nev.
244; Cooley on Const. Lim. [4th ed.] 4.) No office of
alderman could exist under such law, nor could the board
organize thereunder, and defendants' claim of title is, therefore,
invalid. (*People, ex rel.* v. *Bull*, 46 N. Y. 60.) Defendants
are not even *de facto* aldermen for the reason that they are not
incumbents of *de jure* offices. (*Hildreth's Heirs* v. *McIntire's
Devises*, 1 J. J. Marsh. [Ky.] 206.) The right of local self-
government is a vested right, preserved by the Constitution,
and the legislature has no power to take away the char-
tered rights of a municipal corporation, or the vested right of
suffrage of the citizens composing such corporation. (Art. 10,
§ 2; *People, ex rel. Bolton*, v. *Albertson*, 55 N. Y. 50; *Peo-
ple* v. *Pinckney*, 32 id. 377; Sedgwick on the Constr. of C.

& S. Law, 136, 137; Am. Law of Elections, § 446; *Comm.*
v. *Read*, 2 Ashmead, 261, 270, 271; *Oldknow* v. *Wain-
right*, 1 Wm. Bl. 224; *People, ex rel. Farman,* v. *Clute*, 50
N. Y. 451.) The attorney-general may bring actions against
parties who usurp, intrude into or unlawfully exercise any
public office, or any franchise. (Code of Civ. Pro., § 1948;
*People, ex rel. Kingsland,* v. *Clark,* 70 N. Y. 508, 520; *Peo-
ple, ex rel.* v. *Carpenter,* 24 id. 86; *People, ex rel.* v. *Pease,*
30 Barb. 588; *Demarest* v. *Wickham,* 63 N. Y. 320; Dill.
Mun. Corp., § 889, pp. 880, 881; 1 id., §§ 200, 205, p. 227;
*People* v. *Hall*, 21 Alb. L. J. 484.)

*D. J. Dean* for respondents. If the voters might have voted
for fifteen aldermen and by voting for two only exercised in
part their privilege of voting, this did not affect the legality
of the votes cast. (*People, ex rel. Watkins,* v. *Perley*, 80 N.
Y. 624.) The act of 1873 does not contravene the Constitution.
(Constitution, § 1, art. 2; id. 1777, §§ 7, 10, 17; 1 R. S. [Banks'
6th ed.], 84, 39; Sedgwick on Statutory and Constitutional
Law [2d ed.], 198; 1 R. S. [Banks' 6th ed.], 433; Laws of
1870, chap. 138, §§ 6, 7, p. 400; 2 Laws of 1857, chap. 590,
p. 285; Laws of 1858, chap. 321, p. 516; *People, ex rel. Wil-
liams,* v. *Dayton*, 55 N. Y. 367; *Easton* v. *Pickersgill*, id.
310–315.) The court will not pronounce a statute unconstitu-
tional upon any doubtful construction; every presumption is in
favor of constitutionality. (*Gilbert El. R. R.* v. *Kobbe*, 70
N. Y. 367; *Ogden* v. *Saunders*, 12 Wheat. 270; *People* v.
*Albertson*, 55 N. Y. 54; *People* v. *Briggs*, 50 id. 553; *People
v. Sup'rs of Orange Co.*, 17 id. 235; Cooley on Const. Lim.,
marg. p. 182, note 3; *People* v. *Supervisors*, 17 N. Y. 235;
*Ex parte McCollum* 1 Cow. 550.) The same section of an act
may contain provisions which are constitutional and valid, as-
sociated with unconstitutional provisions, and the former may
stand and be executed, even when the latter are rejected and
held void. (Cooley on Const. Lim., marg. p. 178; Sedgwick
on Stat. and Const. Law, 413; *People, ex rel. Fowler,* v. *Bull,*
46 N. Y. 57; *People* v. *Briggs,* 50 id. 553; *Duer* v. *Small,*

17 How. 205 ; *Bank* v. *Dudley*, 2 Peters, 526 ; *Commonwealth* v. *Kimball*, 23 Pick. 362 ; *Maize* v. *State*, 4 Ind. 342 ; *Willard* v. *People*, 4 Scam. [Ill.] 461 ; *Eels* v. *State*, id. 498 ; *Mayor, etc.*, v. *Detrecht*, 32 Ind. 369 ; *People, ex rel. Watkins*, v. *Perley*, 80 N. Y. 624.) If the act of 1873 be wholly void so far as respects the election of aldermen, it only follows that no legal election was held, it does not follow that the relators shall be inducted into office, when the votes show clearly an expression of the popular will against them. (*People, ex rel. Furman*, v. *Clute*, 50 N. Y. 452, 460–467 ; id. 363–463.) The relators show no title to the office, because the acts under which they claim to have been elected have been expressly and unconditionally repealed. (*Wesheimer* v. *State*, 11 Ind. 482 ; *Demarest* v. *Mayor*, 74 N. Y. 161.)

EARL, J. It was provided by the act chapter 137 of the Laws of 1870, as amended by the act chapter 574 of the Laws of 1871, that the board of aldermen of the city of New York should consist of fifteen members, to be elected upon a general ticket from the city at large at the general election in November, and hold office for two years.

It was provided by section 4 of chapter 335 of the Laws of 1873, as amended by chapter 400 of the Laws of 1878, as follows: "The board of aldermen now in office shall hold office until the first Monday in January in the year of 1879, the same being the term for which they were elected. There shall be twenty-two aldermen elected at the general State election which shall occur in the year 1878, three of whom shall be elected in the territory embraced in each senate district as the same existed on the first day of January, 1878, and shall be residents of the district in which they are elected, but no voter shall vote for more than two of said aldermen. * * * * There shall also be elected six aldermen at large, to be voted for on a separate ballot, but no voter shall vote for more than four of the said aldermen at large. * * * * The members of the board of aldermen shall hold office for the space of one year, and shall take office on the first Monday in January next suc-

ceeding their election at noon. Annually thereafter at the general State election there shall be elected a full board of aldermen as hereinbefore provided." *   *   *   *

The act of 1873 was entitled "An act to organize the local government of the city of New York," and by section 119 the acts, chapter 137 of the Laws of 1870 and chapter 574 of the Laws of 1871, were repealed.

The relators claim that section 4 of the act of 1873, as amended, was unconstitutional and void, for the reason that all the voters were not permitted to vote for all the aldermen to be elected; and they base their claim upon section 1 of article 2 of the State Constitution, which provides that "every male citizen of the age of twenty-one years, who shall have been a citizen for ten days, etc., shall be entitled to vote at such election for all officers that now are, or hereafter may be elected by the people," etc. Under that article it is insisted that the system of minority election, as embodied in the act of 1873, was unconstitutional, and that at every election every voter had the right to vote for every officer to be chosen from the city at large, or from the district in which he resided. Therefore, the relators claim that section 4 of the act of 1873, above set out, being unconstitutional and void, was to be treated as if it never had been enacted, and consequently that the act of 1870, as amended in 1871, was still operative and in existence; and that they having become candidates for the offices of aldermen in November, 1880, and receiving each about one thousand votes, which were all the votes cast for aldermen at large under that act, were duly elected to those offices for two years from the first Monday of January, 1881. At the same election the defendants Kenney and others were elected aldermen under section 4 of the Laws of 1873, as amended in 1878, and they received a large majority of the votes cast under that act; each one receiving many more votes than the plaintiffs, and they were declared elected, and on the first Monday of January, 1880, entered upon the discharge of their duties and organized as a board of aldermen.

Thereafter, in the year 1881, this action was commenced by

the attorney-general in the name of the people, on the relation of the individual plaintiffs against Kenney and the other aldermen elected in the fall of 1880, under the act of 1873, claiming that they had unlawfully intruded into the offices of aldermen, and that they were unlawfully holding and exercising the offices of aldermen, and praying judgment that section 4 of the act of 1873, as amended, should be adjudged unconstitutional and void, and that the defendants Kenney and others had usurped, intruded into and unlawfully exercised the offices of aldermen; and that they and each of them be ousted and removed from office, and that it be adjudged that the plaintiffs were entitled to the offices of aldermen, and to the rights, privileges, franchises and emoluments thereof. The action was put at issue by proper denials on the part of the defendants, but did not come to trial in the year 1881; and in the fall of that year the defendants Brady and others were chosen aldermen under the act of 1873, having received at that election, in conformity with that act, a large number of votes; and they entered upon the discharge of their duties as aldermen, and organized the board of aldermen on the first Monday of January, 1882. They were then also made defendants upon the application of the plaintiffs, and the complaint was so amended as to allege that they were also usurpers of, and intruders into the offices of aldermen, and were unlawfully withholding the same from the relators.

During the year 1882, and while Brady and his associates were holding and exercising the offices of aldermen, the action was brought to trial and decided against the plaintiffs; and it was adjudged that Brady and his associates were then entitled to the possession of the offices of aldermen, and the complaint was dismissed, and that judgment having been affirmed at the General Term, the plaintiffs appealed to this court.

It will be noticed that the term of office for which the plaintiffs claim to have been elected has long since expired. The term of office of Kenney and his associates expired on the first Monday of January, 1882, and that of Brady and his associates expired on the first Monday of January, 1883; and two

successive boards of aldermen have since been elected under chapter 403 of the Laws of 1882, which abolished the minority system complained of ; and the offices are now held by aldermen thus elected in the fall of 1883. It is, therefore, plain that the questions involved in this case, so far as they relate to the parties to this action, or to the public, have ceased to be of any practical importance. The individual plaintiffs are not entitled to the offices of aldermen at this time, and if the defendants ever intruded into the offices, they long since ceased to be intruders.

The constitutional question which the plaintiffs sought to raise by the commencement of this action is a very grave and interesting one, and should not be decided in any case unless it is properly presented, and necessarily involved. It need not be decided in this case. If section 4 of the act of 1873, as amended, was constitutional and valid, then it is not questioned that the defendants were legally elected aldermen, and were legally entitled to exercise and discharge the duties of those offices. If the provision contained in section 4, limiting the right of a voter to vote for but two of the three aldermen to be chosen from senatorial districts, and to four of the six aldermen to be chosen from the city at large, is unconstitutional and void, as in conflict with the constitutional provision above referred to, then we are of opinion that that portion of section 4 could be disregarded, and it would not be necessary to condemn the whole section. It would be a complete section and furnish a complete, harmonious system with those restrictions and limitations left out. It provides for the election of three aldermen from the senatorial districts, and six aldermen at large, and if the limitations are unconstitutional and void, then all the voters in each senate district would have the right to vote for three aldermen, and all the voters in the city would have the right to vote for six aldermen at large.

This is not a case where, if this portion of the section is unconstitutional and void, the whole section would have to be condemned. Where part of a statute is unconstitutional, that fact does not authorize the court to adjudge the remainder

void, unless the provisions are so interdependent that one can-
not operate without the other, or so related in substance and
object that it is impossible to suppose that the legislature would
have passed the one without the other. Here the section
would be quite complete without these limitations, and we
cannot say that the legislature would not have passed the act
without the limitations if it had known that they were in con-
flict with the Constitution. With the limitations stricken out,
the section provides for the number of aldermen, how many
shall be elected from districts, and how many from the city at
large, and for the term of office. Nothing more is needed to
make a complete system, and it matters not that the portion
which is condemned is found in the same section with that
which it is sought to retain. In Cooley on Constitutional
Limitations, at page 178, it is said: " The point is not whether
they are contained in the same section, for the distribution of
the sections is purely artificial, but whether they are essentially
and inseparably connected in substance. If, when the uncon-
stitutional portion is stricken out, that which remains is com-
plete in itself, and capable of being executed in accordance
with the apparent legislative intent, wholly independent of
that which was rejected, it must be sustained." The following
authorities are ample to sustain the position that if these limita-
tions are void, they may be disregarded, and the balance of the
section sustained. (*People, ex rel. Fowler,* v. *Bull,* 46 N. Y.
57; *People, ex rel. City of Rochester,* v. *Briggs,* 50 id. 553;
*Commonwealth* v. *Kimball,* 24 Pick. 362; *Maize* v. *The State,*
4 Ind. 342; *Willard* v. *People,* 4 Scam. [Ill.] 461; *Mayor,*
etc., v. *Dechert,* 32 Md. 369.)

Therefore, whether we regard these restrictions contained in
section 4 as authorized or unauthorized by the Constitution, the
defendants could have been elected under that act, and we must
hold that they were legally elected thereunder. So far as the
case discloses, every voter in the city voted for as many of the
candidates for aldermen-at-large as he wished to. It does not
appear that any voter claimed the right to vote for all the six
aldermen and was denied that right. If he chose voluntarily

to waive his constitutional right to vote for six and to vote for but four, that he could do and his ballot would be a valid ballot.

So in the senatorial districts, it does not appear that any voter was denied the right to vote for the three aldermen; and if the voter chose to vote for but two, his ballot would be legal and no one could complain. If a voter had offered to vote for the six aldermen-at-large, or for the three aldermen of a senatorial district, and had been refused, he could by *mandamus* or by some other form of action have presented to the courts the question of his constitutional right to vote for as many candidates as there were aldermen to be elected. So if six of these plaintiffs had been candidates for aldermen-at-large, and had all been voted for upon a single ticket by the same persons, and had received more votes in that way than any other candidates, they could have claimed to be legally elected, and by proper proceeding could have brought before the courts the question of the constitutionality of the restrictions contained in the act of 1873. There are ways enough in which to test the constitutionality of those restrictions, but they are not involved in this case.

The plaintiffs were clearly not elected, as the acts under which they claim to have been elected were repealed, and there was no law authorizing the election of fifteen aldermen-at-large. And whether we regard the restrictions contained in the act of 1873 as valid or invalid upon the facts as they appear in this record, the defendants were legally elected, and legally and constitutionally entitled to exercise and possess the offices of aldermen.

We are, therefore, of opinion that this case was properly disposed of in the court below, and that the judgment should be affirmed.

All concur.

Judgment affirmed.