(21 App. Div. 213.)

PEOPLE ex rel. BURGER et al. v. BLAIR et al. (two cases).

(Supreme Court, Appellate Division, Second Department. October 19, 1897.)

1. GREATER NEW YORK CHARTER—CORONERS—ABOLITION OF OFFICE.

Laws 1897, c. 378 (Greater New York Charter) § 1571, provides that the coroners whose election is provided for in section 1570 shall possess all the powers and perform all the duties vested in or imposed upon coroners by any law of the state, or any law relating to coroners in the city of New York as theretofore constituted. *Held*, that the office of county coroner in any part of the territory comprised in the new city was thereby abrogated from the time it is provided that borough coroners shall be elected.

2. SAME—ELECTION—TIME FOR HOLDING.

Laws 1897, c. 378 (Greater New York Charter) § 1570, provides that coroners "shall hereafter be elected" in the several boroughs, etc. *Held*, that the word "hereafter" refers to the time of the enactment of the statute, and not to the time of its taking effect, and hence the election is within the proviso in section 1611, declaring that the act shall take effect on January 1, 1898, "provided, however, that where by the terms of this act an election is provided or required to be held or other act done or forbidden prior to January 1, 1898, then as to such election and such acts, this act shall take effect from and after its passage."

3. SAME.

By Laws 1897, c. 378 (Greater New York Charter) § 1570, it is provided that borough coroners "shall hereafter be elected * * * at the same general elections as are the sheriffs in the several counties in which such boroughs are situated, shall hold their respective offices for the term of four years," etc. In two of said counties the term of the sheriff is fixed at three years, and the constitution declares that no city officer shall be elected in an even-numbered year. In other counties the term of the sheriff has been fixed or remains at two years. At the election of November, 1897, a sheriff is to be elected in every county that falls in whole or in part within the limits of the greater city. *Held*, that the intent of the legislature was to make the official term of the borough coroners four years, and the reference to elections of sheriffs relates simply to the first election at which borough coroners are to be elected.

4. OFFICERS—POWER TO FILL VACANCIES—CONSTITUTIONAL LAW.

By Const. art. 10, § 2, it is provided that all county officers whose election or appointment is not provided for by the constitution shall be elected or appointed by the boards of supervisors or other county authorities as the legislature shall direct. Section 5 empowers the legislature to provide for filling vacancies in office. *Held*, that under the latter section the legislature cannot empower the governor to fill a vacancy in a county office covered by the former section, where the vacancy is caused by an act of the legislature itself that makes it impossible that the office shall be otherwise than vacant.

Appeals from special term.

Separate proceedings by the people, on the relation of Anthony J. Burger and George W. Delap, against Benjamin F. Blair and others, comprising the board of elections of the city of Brooklyn. From an order directing the issue of a peremptory writ of mandamus in one case, and from an order denying a motion for a peremptory writ in the other, the several parties appeal. Affirmed.

Case No. 1: Appeal from an order directing the issue of a peremptory mandamus to the board of elections of the city of Brooklyn. Case No. 2: Appeal from an order denying motion for a peremptory mandamus to the same board of elections.

Argued before GOODRICH, P. J., and CULLEN, HATCH, and BRADLEY, JJ.

Joseph A. Burr, Corp. Counsel, for appellants in case No. 1 and respondents in case No. 2.

Nathaniel H. Clement and Isaac M. Kapper, for respondents in case No. 1 and appellants in case No. 2.

CULLEN, J.   In this litigation the first and paramount question to be determined is whether, at the annual election of this year, coroners are to be elected for the various boroughs comprising the city of New York as it will be constituted on the 1st day of January, 1898.   By section 1570 of the charter of the new city (chapter 378, Laws 1897) it is provided:

"Four coroners shall hereafter be elected in the borough of Manhattan, two in the borough of the Bronx, two in the borough of Brooklyn, three in the borough of Queens and two in the borough of Richmond.  They shall be elected in the same manner and at the same general elections as are the sheriffs in the several counties in which such boroughs are situated, shall hold their respective offices for the term of four years and shall be removable in the same manner as sheriffs."

By section 1571 it is provided:

"The coroners in each borough shall have an office in said borough and shall appoint a clerk who shall receive an annual salary to be fixed by the board of estimate and apportionment and the municipal assembly, and such and so many assistant clerks as shall be provided for in the annual estimate.  They shall also appoint a stenographer in each borough whose duty it shall be to take accurate and full stenographic minutes and transcribe the same, of all proceedings and testimony taken before a jury in any coroner's court, held by any one of said coroners.  Each of said coroners shall possess all the powers and perform all the duties vested in or imposed upon coroners by any existing laws relating to coroners in the city of New York as heretofore known and bounded, or by any law of this state.  The salaries or other compensation of said coroners shall be fixed by the board of estimate and apportionment and the municipal assembly."

It was conceded on the argument that when the constitutional amendments took effect, on January 1, 1895, the office of coroner of a county ceased to be a constitutional office, and that since that time it has been within the power of the legislature to abrogate the office and transfer its duties to other officials.   By the section of the charter last quoted, it is directed that each of the coroners shall possess all the powers and perform all the duties vested in or imposed upon coroners by any law of the state, or law relating to coroners in the city of New York.   The charter must therefore be construed as abrogating the office of county coroner, in any part of the territory comprised in the new city, from the time that it is provided that borough coroners shall be elected, for it is hardly to be conceived that two sets of officials could discharge the same duty in the same territory. The whole of the county of Kings is embraced within the city of New York.   If, therefore, coroners for the borough of Brooklyn are to be elected at the next election, then from the 1st day of January next the offices of county coroners are abolished, notwithstanding any previous legislation on the subject, and no one can be elected to such office.   I do not understand that the learned corporation counsel seriously disputes this proposition, but his main contention is that no borough coroners are to be elected this year.   The argument in support of that claim is based on section 1611 of the charter:

"For the purpose of determining the effect of this act upon other acts and the effect of other acts upon this act, this act shall, except as in this section is otherwise provided, be deemed to have been enacted on the first day of January, in the year eighteen hundred and ninety-eight. This act shall take effect on the first day of January, eighteen hundred and ninety-eight; provided, however, that where by the terms of this act an election is provided or required to be held or other act done or forbidden prior to January first, eighteen hundred and ninety-eight, then as to such election and such acts, this act shall take effect from and after its passage, and shall be in force immediately, anything in this chapter or act to the contrary notwithstanding."

It is insisted that as the statute does not take effect until January 1, 1898, there is now no borough of Brooklyn, and that the case of borough coroners does not fall within the proviso, because by the terms of the act an election for such officers is not required to be held before the 1st of January next. We think this claim proceeds on too narrow and too literal a reading of the statute. When, in section 1570, it is provided that four coroners shall "hereafter" be elected, we are of opinion that "hereafter" must be referred to the time of the enactment of the statute, not merely to the time it should subsequently take effect. There is an inconsistency in the direction that the coroners are to be elected at the same general elections as the sheriffs in the several counties in which the boroughs are situate, and to hold their offices for the term of four years, if such direction be regarded as continuous; for in two of the counties the term of the sheriff is fixed by the constitution at three years, while in the county of New York it has been fixed by the legislature at two years, and in the county of Kings the failure of the legislature to act on the subject-matter has effected the same result. But this conflict in the provisions of the section is not insurmountable. Similar cases have arisen before. In Re New York & Brooklyn Bridge, 72 N. Y. 527, a statute provided that a new street should be opened in lieu of Frankfort street, of the same width as Frankfort street, and not less than 52 feet and 6 inches in width. As it appeared that Frankfort street was 35 feet wide, it was, of course, impossible that the new street should comply with both statutory requirements. But it was held that the statutory intention was clear, and that the new street should be 52 feet and 6 inches wide. So, in the present case, it is entirely plain that the legislature intended the official term of the borough coroners to b- four years, despite of any reference to the election of sheriffs. But if the reference to elections of sheriffs is not intended to comprehend repeated elections, but simply to refer to the first election at which borough coroners are to be elected, then the conflict between the different provisions entirely disappears. There is this much to be said in support of the latter view: It so happens that at this election a sheriff is to be elected in every county which falls either in whole or in part within the limits of the greater city. Therefore now an election in every borough can be held in compliance with the provision of the statute. If, however, the construction contended for by the corporation counsel is correct, borough coroners cannot be elected in Richmond or Queens for six years to come, for the terms of the new sheriffs in those counties will expire in an even-numbered year,—a year in which the constitution expressly

forbids that any election of a city officer shall be had.    Further, if
we construe the qualification, "prior to January first, eighteen hun-
dred and ninety-eight," to refer only to the "other act done or forbid-
den," then the case falls exactly within the exception or proviso of
the section, for an election of borough coroners is provided and re-
quired to be held.    It would seem to be the natural intention of
the lawmakers that the new city should, from the 1st day of Jan-
uary, 1898, proceed with full corporate machinery.    The borough cor-
oners are city officers, and their salaries and the expenses of their
offices are charged on the entire city alike.    The salaries and ex-
penses of county coroners are county charges, and charged only upon
the counties for which they are elected.    It may be that the framers
of the charter made the first election of the borough coroners synchro-
nous with that of sheriffs so as not to abrogate the terms of any
county coroners who might be in office.    But it is difficult to imagine
any reason which would dictate postponing the election of borough
officers to any period later than one at which they could be elected
without injury to officials already in office.    I am of opinion, there-
fore, that borough coroners are to be elected this year.

These views dispose of the question whether coroners can be elected
this year in Kings county,—the question involved in the second ap-
peal before us.    But it may not be unprofitable to discuss that ques-
tion as unaffected by the enactment of the city charter.    The statute
of 1896 (chapter 424) extending the terms of the coroners, and direct-
ing that their successors shall be chosen at the election in 1899, so
far as it seeks to extend the terms of the coroners in office, is void. as
settled by the recent decision in the case of the district attorney of
this county.    It is claimed, however, that, granting this proposition,
the provision that their successors shall be elected in 1899 is valid
and operative.    In support of this claim is cited People v. Bull, 46
N. Y. 57.    That case was very similar to the one now before us, and
it was there held that, while the attempt to extend the term of the
officer then in office was void, the provision deferring the election
of his successor was valid.    But in the present case there arises a
question that was not considered in the Bull Case, and which it was
probably unnecessary there to consider.    If we carry to its full ex-
tent the doctrine of the Bull Case, as contended for by the learned
corporation counsel, it follows that the term of the coroners now in
office will cease at the expiration of the year, and that no successors
can be elected before the time prescribed in the statute.    How, then,
are the public duties of those officers to be discharged?    The counsel
states that a vacancy will occur, which can be filled in the same
manner as other vacancies are directed by law to be filled.    Under
the existing statutes, a vacancy in the office of coroner is filled by
appointment by the governor until the next election.    The provision
that it shall subsequently be filled at the next election rests wholly
on the statute, as it is no longer a constitutional office.    People v.
Comstock, 78 N. Y. 356.    The legislature, therefore, could repeal
even this provision to then fill the vacancies by election, as it has al-
ready done the provision that at the expiration of the term of the
present coroners their successors shall be elected.    But, without dis-

cussing what might be done, let us consider what will be the situation of the officers under the present constitutional and statutory provisions. While the office is no longer a constitutional one, still it falls within section 2 of article 10 of the constitution, which directs that all county officers shall be appointed by the board of supervisors, or other county authorities, as the legislature shall direct. Hence any statute which bestows upon the governor the appointment of a coroner of a county would be unconstitutional and void. It is true that by section 5 of the same article the legislature is empowered to provide for filling vacancies in office; and I assume that, if the vacancy occurred from what I may term "natural causes," the power to fill the vacancy could be given to the governor, for such has been the statutory provision ever since the adoption of the constitution of 1846, and its validity has never been challenged. But this vacancy has proceeded from the direct action of the legislature, which has not provided for the mere contingency of its occurrence, but has made it impossible that the office should be otherwise than vacant. Therefore, even as the law stands now, for the year 1898 coroners of the county will be the appointees of the governor, in express violation of the constitutional provision that they must either be elected or appointed by the county authorities. But this legislation, if valid, can readily be vastly improved upon. The legislature might create a local office for a definite term, thereafter provide that no successor shall be appointed or elected for some long period subsequent to the expiration of that term, and in the meanwhile, on the theory of a vacancy in the office, fill it in a manner forbidden by the constitution. I deny that the legislature has any such power. The legislature cannot create a vacancy for the express purpose of evading the constitution or defeating the will of the people. People v. Comstock, supra, is to be distinguished, because in that case the body in which was vested the power to fill the vacancy was one which, under the constitution, might have made the original appointment. Therefore, if the successors of the present coroners cannot be elected at this election, it follows that there can be no officers to discharge their duties. The duties of those officers are in constant exercise. No provision of law has been made for transferring them to other officials, and great public inconvenience must arise from the fact that there are no persons to discharge them. Certainly the legislature never contemplated such a situation. Therefore we should either hold that borough coroners are now to be elected, or that the provision deferring the election of county coroners falls with the invalidity of the provision extending the official terms of the present incumbents. In my opinion, the first is the true solution of the difficulty.

The orders in both cases should be affirmed.

HATCH, J., concurs. GOODRICH, P. J., and BRADLEY, J., concur in the result, and in the opinion so far as it discusses the construction of the charter of the city of New York, but express no opinion on the question last discussed in the opinion.